# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **BRENT J. DAVIDSON**, <br> 3994 Stannage Pass <br> New Albany, Ohio 43054, <br><br> Plaintiff, <br><br> v. <br><br> **JANET NGUYEN-SPERRY** <br> 8785 Parkland Bay Drive <br> Parkland, Florida 33076 <br><br> and <br><br> **STEPHEN SPERRY** <br> 8785 Parkland Bay Drive <br> Parkland, Florida 33076 <br><br> and <br><br> **DAKOTA MATTING & ENVIRONMENTAL SOLUTIONS, LLC** <br> 11555 Heron Bay Blvd., Ste 300 <br> Coral Springs Florida 33076, <br><br> Defendants. | Case No. 2:22-cv-4376 <br><br> Judge |

## COMPLAINT WITH JURY DEMAND

Plaintiff Brent J. Davidson ("Plaintiff") hereby files this Complaint against Defendants Janet Nguyen-Sperry ("Nguyen-Sperry"), Stephen Sperry ("Sperry") and Dakota Matting & Environmental Solutions, LLC ("Dakota"), (collectively, "Defendants"), for breach of contract, breach of fiduciary duty, promissory estoppel, fraudulent inducement, violations of the Computer Fraud and Abuse Act, unjust enrichment and declaratory judgment. For his Complaint against Defendants, Plaintiff states and avers as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an individual and a resident of New Albany, Ohio.

2. Nguyen-Sperry is an individual and a resident of Parkland. Florida.

3. Sperry is an individual and a resident of Parkland. Florida.

4. Dakota is a Florida limited liability company with its principal place of business in Coral Springs, Florida.

5. Dakota is registered with the Ohio Secretary of State as a foreign limited liability company.

6. Dakota is authorized to do business in the State of Ohio and regularly does business in the State of Ohio.

7. Plaintiff is a founding member, co-owner and employee/agent of Dakota.

8. Nguyen-Sperry is a member and co-owner of Dakota and was designated as such in order to qualify Dakota as a minority-owned and/or woman-owned business. Nguyen-Sperry is an employee/agent of Dakota.

9. Sperry is an employee/agent of Dakota.

10. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Furthermore, Plaintiff's claims arise, in part, from Defendants' violations of 18 U.S.C. §1030, *et seq*. ("the Computer Fraud and Abuse Act").

11. Pursuant to Ohio Revised Code §§ 2307.381-385, Civ. R. 4.3 and the due process clauses of the United States and Ohio constitutions, this Court has personal jurisdiction over all Defendants for the following reasons: Defendants transacted business in Ohio; Defendants caused tortious injury to Plaintiff in Ohio by acts inside and outside Ohio committed with the purpose of injuring Plaintiff when Defendants might reasonably have expected that Plaintiff would be injured

in Ohio thereby; and/or Defendants purposely availed themselves of the privilege of acting and doing business in Ohio, one or more of Plaintiff's causes of action arise out of Defendants' activities in Ohio, and the exercise of personal jurisdiction over Defendants is reasonable.

12. This Court has personal jurisdiction over Defendants pursuant to Ohio R.C. §2307.381-385 and Civ. R. 4.3 on the basis that they have caused tortious injury in Ohio by an act or omission outside Ohio and they regularly do or solicit business and engage in other persistent course of conduct in Ohio.

13. Venue is proper in the Southern District of Ohio, Eastern Division pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to this action occurred in this District. Plaintiff lives and works for Dakota in Franklin County, Ohio and conducts business on behalf of Dakota in this venue.

## STATEMENT OF FACTS

14. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

15. Plaintiff and Defendant Sperry are lifelong friends who first met when Plaintiff was approximately five years old and Sperry was approximately 12 years old.

16. Prior to 2014, Plaintiff held jobs that were in or related to the lumber, milling and/or construction matting industries.

17. In or around 2014, Plaintiff and Sperry decided to pursue their own construction matting enterprise. In furtherance of that decision they initially formed a company called Pioneer Matting, which did not reach the operational stage.

18. Later, as their business plans evolved, Plaintiff became aware of certain business and competitive advantages that were available to companies that are minority-owned or woman-owned. At that time, there were few, if any, such businesses in the construction matting industry.

3

19. Defendant Nguyen-Sperry is the spouse of Defendant Sperry. Nguyen-Sperry is a woman and is a member of a recognized minority group.

20. Plaintiff, Sperry and Nguyen-Sperry discussed creating a new business entity that would include Nguyen-Sperry as the majority member (51%), thereby qualifying the business for the competitive advantages available to minority-owned and woman-owned businesses.

21. At that time, Nguyen-Sperry worked full-time as an oncologist.

22. After further review and discussions, Nguyen-Sperry and Plaintiff agreed to form the new business entity as contemplated by Plaintiff and Sperry.

23. Dakota was formed in March 2018. A true and accurate copy of the Operating Agreement for Dakota is attached hereto and incorporated herein as Exhibit A.

24. The sole members of Dakota are and have always been Plaintiff (49%) and Nguyen-Sperry (51%).

25. Dakota is engaged in the construction matting industry. At the time of its formation, Sperry and Nguyen-Sperry had limited knowledge of or experience in the construction matting industry. Sperry's background is in the field of information technology ("IT") while Nguyen-Sperry was a practicing oncologist.

26. Following its creation in 2018 and continuing through 2019 and into 2020, Dakota was operated primarily by Plaintiff with assistance and IT support from Defendant Sperry. During that time, Defendant Nguyen-Sperry continued practicing full time as an oncologist and had limited involvement with Dakota's day-to-day operations.

27. In or around 2020, as Dakota's business flourished and its operations expanded, Nguyen-Sperry became more involved with Dakota and eventually scaled back her full-time oncology practice.

4

28. Also in 2020, Plaintiff and Nguyen-Sperry became W-2 employees of Dakota in addition to being its sole members.

29. Plaintiff and Defendant Nguyen-Sperry have received remuneration from Dakota in two distinct ways. As the sole members of Dakota each has received regular distributions in accordance with § 3.2 of the Operating Agreement. After they became W-2 employees in 2020, each also received a salary. The amount of their respective W-2 salaries was calculated to maximize their respective retirement contributions.

30. Defendant Sperry is also a W-2 employee of Dakota and also receives a salary from Dakota.

31. Early in 2021, Plaintiff observed a change in Nguyen-Sperry's demeanor toward him and her approach to Dakota's operations. She became more controlling of Dakota issues and decisions that had previously been handled primarily, if not solely, by Plaintiff. Even though Plaintiff was a founding member and the only person with background and experience in the construction matting industry, Nguyen-Sperry became more dismissive of Plaintiff and his role in company operations. Established divisions of responsibility within the company began to change without notice to or discussion with Plaintiff.

32. In conjunction with these changes, Nguyen-Sperry began to engage in a pattern of dismissing company employees with whom Plaintiff had existing relationships and retaining employees and consultants of her and/or Defendant Sperry's choosing. Plaintiff was increasingly left out of meetings and decisions that his longstanding role, experience and industry knowledge would have dictated he be a part of, as relevant and useful to Dakota's continued success.

33. This pattern continued into 2022 and grew worse. Plaintiff's attempts to communicate with Nguyen-Sperry regarding Dakota operations were often disregarded or dismissed. When she did respond, Nguyen-Sperry frequently treated Plaintiff with arrogance,

disdain, or outright contempt.

34. Finally, by letter dated November 21, 2022, Nguyen-Sperry purported to terminate Plaintiff's employment with Dakota. A copy of that letter is not attached hereto because it contains false and defamatory allegations against Plaintiff, in a clear pretextual effort to justify termination of the founding member and co-owner's employment.

35. On or after November 21, 2022, Defendants have: (a) wrongfully terminated payment of the salary that was provided to Plaintiff as an employee of Dakota; (b) wrongfully terminated the health and dental insurance coverage that was provided to Plaintiff and his family as a member of Dakota; (c) wrongfully seized control of the e-mail account that was provided to Plaintiff as a member and co-owner of Dakota; (d) locked Plaintiff out of the company's servers, denying him access to data and information to which he is entitled as member and co-owner of Dakota; (e) obtained unlawful access to and locked Plaintiff out of accessing his business and personal Dropbox folders; (f) used and/or withheld from Plaintiff the personal data and information stored within his Dropbox folders; (g) prevented Plaintiff from communicating with Dakota clients, vendors and suppliers regarding ongoing business while falsely telling those clients, vendors and suppliers that Plaintiff's employment was terminated for cause, thereby jeopardizing those relationships and the continued success of the company; (h) demanded that Plaintiff "return" items of personal property that were issued to him and/or purchased by him as a member of Dakota; (i) sent random strangers to Plaintiff's home, ostensibly to retrieve items of personal property but in reality to harass and intimidate Plaintiff, his wife and their young children; and (j) threatened unwarranted police action against Plaintiff in a further effort to harass and intimidate him and his family.

36. In addition, Plaintiff believes that Defendants intend to wrongfully withhold the year-end distribution that is due to be paid to him pursuant to § 3.2 of the Operating Agreement.

37. Upon information and belief, Defendants have conspired to take the above actions against Plaintiff in an effort to wrongfully squeeze Plaintiff out of Dakota and the Matting Partnership and to keep all related business, assets, relationships and profits for themselves.

### COUNT I: DECLARATORY JUDGMENT OF *DE FACTO* PARTNERSHIP UNDER OHIO LAW

38. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

39. Plaintiff and Defendant Sperry entered into a *de facto* partnership ("the Matting Partnership") under Ohio law. Defendant Sperry consented to the Matting Partnership.

40. As part of their Matting Partnership efforts and to gain access to certain business and competitive advantages, Plaintiff and Defendant Sperry conceived of Dakota as a minority-owned and woman-owned business and invited Defendant Nguyen-Sperry to be a member of that business.

41. While Defendant Nguyen-Sperry has grown into her role and has become an important contributor to Dakota's ongoing success, her purported termination of Plaintiff's employment with Dakota is an *ultra vires* act and is contrary to and in derogation of the Matting Partnership.

42. Defendants have misappropriated business, relationships, assets and opportunities that rightfully belong to the Matting Partnership.

43. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered damages in excess of $75,000.

### COUNT II: PROMISSORY ESTOPPEL/FRAUDULENT INDUCEMENT

44. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

45. Defendants Sperry and Nguyen-Sperry represented to Plaintiff that Nguyen-Sperry's designation as "majority" member of Dakota was for a specific purpose and would not lead to a situation where Plaintiff, as the only person among them at the company's formation with

7

any knowledge and experience in the construction matting industry, would be shut out of meaningful participation in the direction, operation, and profits of Dakota or the Matting Partnership.

46. Defendants Sperry and Nguyen-Sperry made those representations knowingly, to induce Plaintiff to sign the Dakota Operating Agreement.

47. Plaintiff reasonably relied on those representations and placed his trust in Defendants Sperry and Nguyen-Sperry to honor them when he signed the Operating Agreement.

48. Plaintiff relied on the representations of Defendants Sperry and Nguyen-Sperry to his detriment, as Defendant Nguyen-Sperry has used her "majority" member status to effectively shut Plaintiff out of meaningful participation in the direction, operation, and profits of Dakota or the Matting Partnership.

49. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered damages in excess of $75,000.

## COUNT III: BREACH OF FIDUCIARY DUTY

50. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

51. As a member of the Matting Partnership, Defendant Sperry owed a heightened fiduciary duty and duty of loyalty, honesty and fair dealing to Plaintiff.

52. As a member of Dakota, Defendant Nguyen-Sperry owed a heightened fiduciary duty and duty of loyalty, honesty and fair dealing to Plaintiff.

53. Defendants Sperry and Nguyen-Sperry breached their fiduciary duties to Plaintiff by, *inter alia*, shutting Plaintiff out of meaningful participation in the direction, operation, and profits of the Matting Partnership and Dakota; wrongfully terminating Plaintiff's employment with Dakota; wrongfully terminating the health and dental insurance coverage that was provided to

8

Plaintiff and his family as a member of Dakota; and wrongfully attempting to convert the business, assets, relationships, and profits of the Matting Partnership and Dakota for themselves.

54. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered damages in excess of $75,000.

## COUNT IV: WRONGFUL TERMINATION OF EMPLOYMENT AND HEALTHCARE BENEFITS

55. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

56. Plaintiff's employment with Dakota and the healthcare benefits that were provided to Plaintiff and his family as a member of Dakota were terminated for an improper purpose and contrary to law.

57. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered damages in excess of $75,000.

## COUNT V: BREACH OF PARTNERSHIP AND OPERATING AGREEMENTS

58. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

59. In forming the Matting Partnership, Plaintiff and Defendant Sperry agreed to act as partners in all material respects, including but not limited to business operations, direction, expenses, revenues, and decision-making.

60. In forming Dakota as part of the Matting Partnership, Plaintiff and Defendants agreed that Dakota would operate as a minority-owned and woman-owned business with the participation of Defendant Nguyen-Sperry.

61. Plaintiff and Defendant agreed that Nguyen-Sperry's designation as "majority" member of Dakota was for a specific purpose and would not lead to a situation where Plaintiff, as the only person among them at the company's formation with any knowledge and experience in the construction matting industry, would be shut out of meaningful participation in the direction, operation and profits of Dakota or the Matting Partnership.

62. Defendants have breached one or more provisions of the Matting Partnership agreement and/or the Dakota Operating Agreement, including, *inter alia*, the duty of good faith and fair dealing required of Defendants pursuant to law.

63. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered damages in excess of $75,000.

## COUNT VI: UNJUST ENRICHMENT

64. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

65. Plaintiff conferred benefits upon Defendants as a member of the Matting Partnership and as a member and employee of Dakota. Plaintiff brought unique and valuable experience, relationships, and insights to the businesses, thereby increasing their value and the corresponding value of Defendants' membership and employment interests.

66. Defendants knew of the benefits conferred upon them by Plaintiff and have unjustly retained those benefits without equitable compensation to Plaintiff.

67. As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered damages in excess of $75,000.

## COUNT VII: VIOLATIONS OF COMPUTER FRAUD AND ABUSE ACT

68. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

69. Dakota's computers and computer systems are "protected computers" under the CFAA, 18 U.S.C. §1030(e)(2) as they are used in and affect interstate commerce or communication.

70. Defendants intentionally accessed Dakota's protected computer system and Plaintiff's personal Dropbox folders therein, without authorization and/or in excess of their authorization in improperly accessing and misappropriating Plaintiff's confidential, personal and

financial information. By virtue of this unlawful misconduct, Defendants improperly obtained information from Dakota's protected computer system in violation of the Computer Fraud and Abuse Act.

71. Defendants' computer-related misconduct described above, without authorization and/or beyond the scope of their authorization, has caused, and is continuing to cause, serious and irreparable harm and injury to Plaintiff. Plaintiff has no adequate remedy at law to protect himself from the continuing harm, injury, and damage which have been and will be caused by Defendants' wrongful conduct.

72. Plaintiff is entitled to temporary and permanent injunctive relief, enjoining further violation of the Computer Fraud and Abuse Act by Defendants, and ordering Defendants to restore full and exclusive access to Plaintiff's personal, confidential and financial information to Plaintiff.

**WHEREFORE,** for the foregoing wrongful acts, Plaintiff demands judgment in his favor, as follows:

1) A declaration that Plaintiff and Defendant Sperry formed the Matting Partnership as equal partners, and that Dakota was conceived and formed in furtherance of the Matting Partnership;

2) A declaration that Defendant Nguyen-Sperry's purported termination of Plaintiff's employment with Dakota is contrary to and in derogation of the Matting Partnership and is therefore null and void;

3) A declaration that Defendants' termination of the health care and dental coverage that was provided to Plaintiff and his family as a member of Dakota was unlawful, and an order requiring said health care and dental coverage to be reinstated;

4) Temporary, preliminary and permanent injunctive relief enjoining further violation of the Computer Fraud and Abuse Act by Defendants and ordering Defendants to restore full and exclusive access to Plaintiff's personal, confidential and financial information to Plaintiff;

5) Compensatory damages jointly and severally against Defendants in an amount exceeding $75,000 to be proven at trial;

6) Punitive and exemplary damages jointly and severally against Defendants, Plaintiff's reasonable costs and fees, attorneys' fees, prejudgment interest and all such other relief as this Court may deem just and proper.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

By: */s/ Michael J. King*
Michael J. King (0072597)
Matthew S. Brown (0077687)
950 Goodale Blvd., Suite 200
Columbus, Ohio 43215
Email:  mking@cpmlaw.com
Email:  mbrown@cpmlaw.com
Tele:   (614) 228-6135
Fax:    (614) 221-0216
*Attorneys for Plaintiff*
*Brent J. Davidson*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues presented herein

*/s/ Michael J. King*
Michael J. King (0072597)