IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Brent J. Davidson**,                         Case No: 2:22-cv-4376

    Plaintiff,                                 Judge Graham

    v.

**Janet Nguyen-Sperry**, *et al.*,

    Defendants.

**OPINION AND ORDER**

    Plaintiff Brent Davidson, an Ohio resident, brings this action for breach of a partnership agreement and breach of fiduciary duty. Davidson was a member, co-owner, and employee of Defendant Dakota Matting & Environmental Solutions, LLC ("Dakota"). He alleges that Defendants Janet Nguyen-Sperry and Stephen Sperry wrongfully terminated his employment and excluded him from participation in Dakota's business.

    The individual defendants both reside in Florida, and Dakota is a Florida limited liability company with its principal place of business in Florida. This matter is before the Court on Defendants' motion to dismiss for lack of personal jurisdiction. Alternatively, Defendants move to transfer venue to the United States District Court for the Southern District of Florida.

    For the reasons set forth below, Defendants' motion to dismiss is **DENIED**.

**I.     FACTUAL BACKGROUND**

    According to the Complaint, Davidson and Sperry are lifelong friends who decided to pursue a business enterprise in the construction matting industry. (ECF No. 1 at ¶ 14-16.) In 2014, they formed a company that did not "reach the operational stage." (*Id*. at ¶ 17.) Subsequently, Davidson and Nguyen-Sperry, the spouse of Sperry, formed Dakota in 2018. (*Id*. at ¶ 23.) Davidson claims that Nguyen-Sperry was made the majority member with 51% ownership, while Davidson was given 49% ownership, so that Dakota could take advantage of the "competitive advantages available to minority-owned and woman-owned businesses." (*Id*. at ¶ 20.)

    Davidson alleges that he originally operated the business while Sperry provided information technology support. (*Id*. at ¶ 25.) From the time that Dakota was formed in 2018, he consistently fulfilled his duties as a member and later an employee of Dakota from his home in

Ohio. (ECF No. 14-1 at PAGEID 84.) Sperry worked from his home in Florida. (*Id*.) From Ohio, Davidson regularly communicated with Sperry and Nguyen-Sperry by videoconference and teleconference about the operations of Dakota. (*Id*. at PAGEID 85.)

Dakota had other significant connections to Ohio. According to Davidson, a majority of Dakota's first sales were in Ohio. (*Id*. at PAGEID 84.) Its largest customer, with which it did $4 million in sales in 2022, is in Ohio. (*Id*.) Further, at least five key employees live in Ohio, including its business director, distribution coordinator, and logistics coordinator. (*Id*.)

In 2020, Nguyen-Sperry became an employee of Dakota and became more involved with the business. (ECF No. 1 at ¶¶ 27-28.) Davidson alleges that Nguyen-Sperry soon after began to change her demeanor and started to shut out Davidson from business decisions. (*Id*. at ¶ 31.) Davidson alleges that he was left out of meetings and that Davidson was shut out from communicating with Nguyen-Sperry. (*Id*.) Davidson further alleges that Nguyen-Sperry dismissed longstanding employees of the company and employees that had relationships with Davidson. (*Id*. at ¶ 32.) In a letter dated November 21, 2022, Nguyen-Sperry terminated Davidson's employment with Dakota. (*Id*. at ¶ 34.) Alongside this action, Davidson stopped receiving his salary, lost health insurance benefits, and lost access to his email account and the company servers. (*Id*. at ¶ 35.)

Davidson filed this lawsuit, asserting the following claims: (1) declaratory judgment of *de facto* partnership under Ohio law, (2) promissory estoppel/fraudulent inducement, (3) breach of fiduciary duty, (4) wrongful termination of employment and healthcare benefits, (5) breach of partnership and operating agreements, (6) unjust enrichment, and (7) violations of the Computer Fraud and Abuse Act.

## II.     STANDARD OF REVIEW

Defendants move under Fed. R. Civ. P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). A plaintiff's burden varies depending on how the district court handles the jurisdictional issue, as the court may: (1) decide the motion on the basis of written submissions and affidavits alone, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Where, as here, the court does not conduct an evidentiary hearing, plaintiff must establish a *prima facie* case of personal jurisdiction. *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327

F.3d 472, 476-78 (6th Cir. 2003); *Smith v. Home Depot USA, Inc.*, 294 Fed. App'x 186, 188-89 (6th Cir. 2008). In this posture, "the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). The court "may consider the defendant's undisputed factual assertions" but must consider disputed facts in a light most favorable to the plaintiff. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "The court does not weigh the controverting assertions of the party seeking dismissal, so as to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1069 (S.D. Ohio 2022) (citing *Theunissen*, 935 F.2d at 1459).

### III. DISCUSSION

"A valid assertion of personal jurisdiction must satisfy both the state long-arm statute, and constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). *See also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Zakharov*, 667 F.3d at 711–12. To determine whether personal jurisdiction exists over a nonresident defendant in a diversity action, the Court must apply the law of the state in which it sits, subject to due process limitations. *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 U.S. Dist. LEXIS 53397, at *8 (N.D. Ohio Aug. 2, 2006) (referencing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)).

#### A. Ohio's Long-Arm Statute

In 2021, the Ohio Legislature amended the Ohio Long-Arm Statute. *See* O.R.C. § 2307.382. Since then, courts in this district have held that this amendment extended the Ohio Long-Arm Statute to the limits of the United States Constitution. *AmaTech Grp. Ltd. v. Fed. Card Servs.*, LLC, No. 1:21-cv-406, 2022 U.S. Dist. LEXIS 1655, at *11-12 (S.D. Ohio Jan. 5, 2022). Following this holding, this Court agrees that Ohio's long-arm statute is satisfied as long as constitutional due process is satisfied.

In any event, this Court finds that Ohio's long-arm statute is satisfied. It permits jurisdiction over defendants who "transact any business in this state." O.R.C. § 2307.382(A)(1). "Transact" is given a broad definition, including to "carry on business," to "have dealings," and to contract. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (quoting *Kentucky Oaks*

3

*Mall v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 559 N.E.2d 477, 479 (Ohio 1990)) (internal punctuation omitted).

According to Davidson's affidavit, Dakota has had at least five employees based in Ohio, and has many sales contracts with Ohio customers from which Dakota has earned substantial income. Business was substantial enough in Ohio that Dakota was registered as a foreign limited liability company to have the privilege of transacting business in the state. Thus, Davidson has shown that Dakota transacted business in Ohio, and therefore, jurisdiction is proper under Ohio's long-arm statute.

B.  **Constitutional Due Process**

This Court next considers whether exercising jurisdiction would comport with Due Process. Traditionally, there are two types of personal jurisdiction: general and specific.[1] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Courts also have personal jurisdiction over defendants who consent to jurisdiction. *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 143 S. Ct. 2028 (2023). A court has general jurisdiction when a defendant's affiliations with the forum state are "so 'continuous and systematic' as to render" the defendant "essentially at home" there. *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A corporate defendant is generally "at home" at its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, the individual defendants reside in Florida and Dakota is at home in Florida.

---

[1] In *Mallory*, the Supreme Court held that Norfolk Southern was subject to personal jurisdiction in Pennsylvania based on the corporation's consent given by registering to do business in the state. Norfolk Southern was incorporated in Virginia and was registered as a foreign corporation in Pennsylvania.

The *Mallory* court, applying *Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), found that when the state approved Defendant's application as a registered foreign corporation, it conferred on the corporation "both the benefits and burdens shared by domestic corporations—including amenability to suit in state court on any claim." *Id.* at 2031 (citing 42 Pa. Const. Stat. § 5301(a)(2)(i)).

It is unclear how this ruling will shift the jurisprudence regarding consent to jurisdiction across the country, including in Ohio. Prior to *Mallory*, the Ohio Supreme Court held, and the Sixth Circuit mirrored, that registration of a statutory agent does not indicate consent to personal jurisdiction in Ohio. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993); see also *Wainscott v. St. Louis-San Francisco Ry. Co.*, 47 Ohio St. 2d 133, 351 N.E.2d 466, (1976). Neither the Sixth Circuit, nor the Ohio Supreme Court, have yet had the opportunity to consider the impact of *Mallory* on the case law. This Court will not grapple with this question because it finds that specific jurisdiction exists. *See infra*. At least one court has noted that Ohio's foreign corporation laws do not contain the same consent-to-jurisdiction language which the Pennsylvania statute expressly contains. *See Union Home Mortg. Corp. v. Everett Fin., Inc.*, No. 1:23 CV 00996, 2023 U.S. Dist. LEXIS 178638, at *3 (N.D. Ohio Oct. 4, 2023).

### 1. Specific Jurisdiction

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (quotations omitted). The central concern is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *accord Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Sixth Circuit utilizes a three-part test for evaluating whether the proposed exercise of personal jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prod. & Controls, Inc. v. Safetech Intl, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quotations omitted).

### a. Purposeful Availment

Specific jurisdiction over Defendants is initially dependent on whether the Defendants purposefully availed themselves to the jurisdiction of this Court. "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (citations and quotations omitted). The Sixth Circuit has held that "the Ohio transacting any business standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.,* 198 F. App'x 425, 432 (6th Cir. 2006). As detailed above, Dakota has transacted millions of dollars of business in Ohio and employed at least five Ohio citizens, such that the Ohio long-arm statute is satisfied. The Court finds that Dakota purposefully availed itself of jurisdiction in the Ohio courts.

The Court also finds that the individual Defendants purposefully availed themselves of the Ohio forum. Sixth Circuit precedent is clear that a defendant purposefully avails itself of the jurisdiction of the forum state by creating a strong business relationship with residents of the forum state. The Sixth Circuit explained:

> [P]arties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions for the

> consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S. Ct. 927, 94 L. Ed. 1154 (1950)). Although entering into a contract with an out-of-state party alone does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment. *Id*. at 478-79. Factors to consider are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007). The individual Defendants had a strong business relationship with the forum. The individual Defendants formed a partnership with Davidson, an Ohio resident, and allowed Davidson to operate Dakota from his home in Ohio. Additionally, the individual Defendants supervised several employees from Ohio, including Davidson in his capacity as an employee. *See Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 510-11 (E.D. Ky. 2019) (holding that business purposefully availed itself of acting in Kentucky by employing individual who lived and worked remotely in Kentucky). The individual Defendants purposely availed themselves of the jurisdiction of the Court as they "actively participat[ed] in [Dakota's] Ohio-based business by supervising [Davidson's] employment." *Dugger v. Honeywell Int'l, Inc.*, No. 1:21-cv-00892, 2021 U.S. Dist. LEXIS 240089, at *22-23 (N.D. Ohio Dec. 16, 2021).

In this case, the Court finds that the Defendants purposefully availed themselves in Ohio because they: (1) formed a longstanding business contractual relationship through an operating agreement that established a limited liability company with Davidson, an Ohio resident, as a 49% member and co-owner, (2) employed Davidson and supervised him, (3) employed and supervised several other Ohio residents, (4) registered as a foreign limited liability company in Ohio to have the privilege to transact business in Ohio, (5) intentionally sought business opportunities in Ohio, and (6) earned millions of dollars in revenue from at least one Ohio customer. These facts do not suggest that the Defendants' contacts with Ohio were "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Rather, they demonstrate how the Defendants purposefully availed themselves to suit when they chose to create substantial, continuous connections with the forum state.

      **b.    Cause of Action Arising From Conduct**

For this Court to have personal jurisdiction, the allegations in Davidson's complaint must "arise out of or relate to the defendant's contacts within the forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021) (internal quotations and citations

omitted). Defendants concede this Court may have jurisdiction if they were to face suit directly regarding the business dealings in Ohio. However, Defendants claim that this lawsuit does not arise out of or relate to their connections to Ohio because it "concerns actions allegedly committed by the Defendants from Dakota Matting's headquarters and principal place of business located in the State of Florida" and "contains no allegations specific to Dakota Matting's (or the individual Defendants') locations or contacts in Ohio." (ECF No. 8 at PAGEID 56.)

Several of Davidson's claims allegedly arise from the "long-term business relationship" between Davidson and Defendant Nguyen-Sperry that began when they formed Defendant Dakota. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007). This relationship is sufficient to find that a cause of action arises from it when the Defendants exploited the Ohio market in furtherance of this contractual agreement and therefore derived value from Davidson's presence in Ohio. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). Some of Davidson's claims allegedly arise from the employee-employer relationship between him and Dakota. A controversy centered around an employment agreement arises from and relates to the actions of a business in the state when the business sends employees into the state, exercises direct supervision and control over the employees, and uses those employees to further business in the state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (1945).

The Court finds the causes of action arise from and relate to Defendants' contacts with Ohio because they stem from the business and employment relationships with Davidson as a co-owner, member, and employee of Dakota. First, Davidson claims that he and the individual Defendants formed a *de facto* partnership in 2014 and later formed Dakota in 2018. (ECF No 14-1 at PAGEID 83.) Unlike in *Carpenter v. S. Airways Express*, Dakota benefited from Davidson's residence in Ohio and Davidson used his connections in Ohio in furtherance of sales contracts for Dakota in Ohio. *Carpenter v. S. Airways Express*, No. 2:21-cv-568, 2021 U.S. Dist. LEXIS 240151 (S.D. Ohio Dec. 16, 2021). From 2018-2020, Davidson operated Dakota from Ohio, and the Defendants had minor roles in the daily operations of Dakota. (*Id*.) In 2020, in addition to his role as a member and co-owner of Dakota, Davidson became an employee of Dakota and worked from his home in Ohio. (*Id*.) In his capacities as a member, co-owner, and employee, Davidson has made decisions from Ohio and participated in video and phone conference calls.

After he was terminated, he alleges the individual Defendants terminated his salary and health insurance, provided to him in Ohio, prevented him from communicating with clients,

7

suppliers and vendors, in Ohio and elsewhere. (*Id*. at PAGEID 85.) He also alleges that the Defendants withheld required the annual distribution for 2022 that should have been paid to him in Ohio, and sent strangers to his home in Ohio to retrieve "retrieve items of personal property but in reality to harass and intimidate me, my wife and our young children." (*Id*.) These are the factual underpinnings of the cause of action. The Plaintiff has made a *prima facie* showing that the cause of action arises out of or relates to the Defendants' connections to the forum state.

### c. Reasonableness

For a Court to have specific jurisdiction over a Defendant, the exercise of jurisdiction must be reasonable and "comport with traditional notions of fair play and substantial justice." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267-68 (6th Cir 1996). "Once plaintiff shows that a defendant purposefully directed its activities towards forum residents, the defendant cannot defeat jurisdiction unless it presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988) (quoting *Burger King*, 471 U.S. at 477).

To evaluate whether it is reasonable, courts will consider a number of factors, which include: "(1) the burden on the defendant to litigate in the forum state; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interest of other states in securing the most efficient resolution of the case." *DCM Grp., Inc. v. Ebix, Inc.*, No. 2:17-cv-740, 2018 U.S. Dist. LEXIS 222324, at *17 (S.D. Ohio Dec. 13, 2018) (citing *CompuServe Inc.*, 89 F.3d at 1268).

Defendants allege that Florida, and not Ohio, has an interest in resolving this dispute and that the actions of the Defendants alleged by Plaintiff were all committed in Florida. (ECF No. 8 at PAGEID 56.) Defendants also argue that they will be burdened by litigating in Ohio because "most, if not all, of the discovery will involve the production of documents maintained at Dakota Matting's headquarters and deposing Dakota Matting's representatives, including the individual Defendants, who work at Dakota Matting's headquarters located in Florida." (ECF No. 8 at 57.)

Considering the factors, it is reasonable for there to be jurisdiction in the Southern District of Ohio. The Court finds that the burden on Defendants to litigate in Ohio is not substantial. The transport of witnesses and evidence does not make granting specific jurisdiction unreasonable, and electronic evidence makes the transfer of evidence easier. The fact a Defendant must travel to

appear does not preclude granting specific jurisdiction. *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003).

Ohio has a strong interest in this dispute. Davidson is an Ohio resident, carried out his work as a member and employee of Dakota in Ohio, and Dakota transacts significant and regular business in Ohio, including having employees in Ohio. (*see Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033 (1987) "Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.") Even though Florida is the residence of the Defendants, it does not diminish Ohio's interest in the lawsuit. Therefore, Defendants have not met their burden to show it would be unreasonable to subject Defendants to suit in Ohio, and this Court has specific jurisdiction over the claims in this suit.

### C. Venue

Here, as the Court has found that personal jurisdiction exists, the Defendant seeks to transfer the case to the Southern District of Florida. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Typically, the moving party bears the burden of proving that transfer is warranted. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849-50 (S.D. Ohio 2004). That's because, at least under the common law doctrine of *forum non conveniens*, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) (superseded by 28 U.S.C. § 1404). But, "where the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice," *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) (internal quotations omitted), because the "assumption of convenience" for a foreign plaintiff is "'much less reasonable,'" *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 493 (6th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). Indeed, courts in this Circuit typically require a movant to establish the propriety of transfer by a preponderance of the evidence. *Esperson v. Trugreen Ltd. P'ship*, No. 2:10-CV-02130-STA, 2010 U.S. Dist. LEXIS 114500, 2010 WL 4362794, at *4 (W.D. Tenn. Oct. 5, 2010), report and recommendation adopted, No. 2:10-CV-02130-STA, 2010 U.S. Dist. LEXIS 64637, 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010) (discussing *Roberts Metals, Inc. v. Florida*

9

*Properties Mktg. Grp., Inc.*, 138 F.R.D. 89, 93 (N.D. Ohio 1991), aff'd, 22 F.3d 1104 (Fed. Cir. 1994) (per curiam). The Court will therefore apply a preponderance of the evidence standard, requiring the movants—Defendants—to show that the case warrants transfer.

The first step is to determine whether the proposal transferee court is forum where this action might have been brought. *See Kay*, 494 F. Supp 2d at 849. Here, there is no dispute that Davidson could have brought this suit in Florida, where all of the Defendants reside. *See* 28 U.S.C. § 1391(b)(1).

Next, the Court considers the § 1404 factors. "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citing *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)). "Convenience" and "the interest of justice" have been extrapolated to include "the accessibility of evidence, the availability of process to make reluctant witnesses testify, the costs of obtaining willing witnesses, [and] the practical problems of trying the case most expeditiously and inexpensively." *Id*. (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136-37 (6th Cir. 1991)) (internal quotation marks omitted). This Court has also considered "the locus of the operative facts . . . the relative means of the parties . . . the forum's familiarity with the governing law . . . [and] the weight accorded the plaintiff's choice of forum." *Int'l Found. Corp. v. Disney 1999 Ltd. P'ship*, No. 2:09-CV-983, 2010 U.S. Dist. LEXIS 138283, 2010 WL 1438759, at *2 (S.D. Ohio Apr. 9, 2010) (Graham, J.) (quoting *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006)). And while the Court has many factors at its disposal to determine whether transfer is appropriate, these factors are always case-specific. *Id*.

Here, the factors reveal that transfer to the Southern District of Florida is not warranted. Defendants' argument for transfer is based on the assertion that records and witnesses are located in Florida. However, as detailed in the discussion on reasonableness of specific jurisdiction, evidence is likely mostly electronic and easily transferrable to Ohio. Defendants allege that the witnesses could not be compelled to testify in Ohio pursuant to Fed. R. Civ. P. 45 because they work for Dakota in Florida. But Dakota, as the employer of those witnesses, could certainly arrange for their depositions to be taken and could, if it chooses, produce these witnesses at trial in Ohio. Defendants, as leaders of a business entity, have greater means to travel than Davidson, who is an

individual. Davidson is an Ohio resident and filed this case in the Southern District of Ohio. He worked and was supervised in the Southern District of Ohio. He fulfilled his responsibilities as a member and co-owner of Dakota in the Southern District of Ohio. Davidson plans to present witnesses who reside in the Southern District of Ohio. Considering convenience and the interest of the justice, the Court finds by a preponderance of the evidence that the balance of factors does not so strongly favor the Defendants to warrant transfer out of this district.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion (ECF No. 8) is **DENIED.**

**IT IS SO ORDERED.**

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: November 20, 2023